Thank you, Your Honor. May it please the Court, I'd like to begin where we left off in the last argument, which is the oscillator voltage limitation in claim 37. And the issue in this appeal is not the output, but rather it's the input. What does supply voltage mean? And the Board correctly determined that a supply voltage is the voltage into the oscillator. There are at least three reasons for that. One is that you're dealing with a limitation that begins an oscillator. So it's clear that this limitation is talking about what the oscillator is. The argument on appeal that is raised in the cross appeal is that supply voltage in the wherein clause. You're starting with the cross appeal then? I'm starting with the cross appeal, if that's okay, just because we left off with that. No, no, you can't do that. Oh, okay. You've got to address your appeal purpose, and then you'll get a chance to address the cross appeal purpose. I'm particularly happy with the change seats. I apologize, Your Honor, but I'm happy to go into our appeal first. And there I'd like to raise the issue of reasonable expectation of combining the Ingram-Cadwell, what they call the Ingram-Cadwell system, with GERPIDE. And as the Court knows, this is the second time that this issue has been before the Court. Okay, let me ask you a question here, because obviously the question of combining GERPIDE with Ingram-Caldwell was properly an issue on the remand before the war. But you say that the issue of combining Ingraham and Caldwell itself was before the board. I don't read the mandate as leaving that question open. The scope of the remand is to consider, based on the proper plaintiff's argument, we vacate the remand of the board to consider whether SAMHSA has shown there to be a reasonable expectation of success in combining the teaching of GERPIDE with the teachings of Ingraham-Caldwell. So that seems to be the scope of the remand. And yet, you're arguing that the board occurred by failing to address something that wasn't within the scope of the remand. Because it had never been addressed in the earlier final written decision at all. And it's foundational to whether you can then add GERPIDE to that combination. And that's why we raised it. Are you saying, in effect, that the combination of Ingraham and Caldwell is incorporated within the question of the combination of Ingraham-Caldwell and GERPIDE? Yes, that's our argument. But if you read our mandate as not leaving that open, you've got a problem. We do with that particular combination, but not with the combination of adding GERPIDE to that system. You would agree that principles of law of the case apply here? I would. And that is actually one of the issues. The board read... You didn't raise in the first appeal the Ingraham-Caldwell combination issue, right? We didn't because we didn't have to. The board had found in favor of us based on combining, whether GERPIDE could be combined with Ingraham-1 and Caldwell. So it never got to the foundation. Yes, Your Honor. And I'll move to that. And that's the reasonable expectation of success in combining GERPIDE with Ingraham-1 and Caldwell. And that was plainly within the scope of the mandate. But the board, we don't think, read it that way. It seemed that what the board in the second final written decision did was essentially assume that GERPIDE could be combined with Ingraham-1 and Caldwell and work for the intended purpose of reducing interference in that combination. And therefore, the only question that was remanded to the board was whether that combination could select from multiple possible frequencies. And that's essentially taking the claim language and saying, in hindsight, would that combination do it? And that was all the board looked at, was whether that combination could select from multiple possible frequencies. It never went back and considered the evidence in the record of whether that combination could be made in the first place to reduce electrical interference. The reasonable expectation of success that it would work for that particular intended purpose. But we don't think that that's an accurate reading of what this court said in the mandate. The court expressly said that it was remanding to the board to consider whether Samsung has shown that there would have been a reasonable expectation of success in combining the teachings of GERPIDE with the teachings of Ingraham-1 and Caldwell to arrive at the claimed invention. And to do that, there has to be some sort of teaching. The teaching in GERPIDE of reducing the interference had to have been shown in the petition. The petition had to say that a person of learning skill in the art would have understood that GERPIDE's teachings of reducing interference could have worked with the Ingraham-1-Caldwell system. And in order to reduce that interference, what GERPIDE says is there has to be some way of measuring what that interference is. GERPIDE offered several ways that it could be measured, and we showed that none of those ways would work to reduce interference in the Ingraham-1-Caldwell system. And in fact, the way Ingraham-1 and Caldwell works with the touch circuits being either on or off, there is no possible way in GERPIDE or any other combination to measure whatever interference there might be in that combination. It simply wouldn't work, and that is not disputed. There is nothing in either the petition itself or in the board's analysis that explains how you would measure interference in Ingraham-1 and Caldwell such that you could take the teachings of GERPIDE to measure what that interference is and then correct for it. It is simply not there. And for that reason, we think the board not only erred, but again, it essentially assumed that it didn't have to find the teachings of GERPIDE, that the teachings of GERPIDE would include some way of measuring interference. Because the board knew and the petitioner knew that that can't be done in their foundational combination system of Caldwell and Ingraham-1. And you don't really have to go any further to know that than to look at the petition itself, the starting point of any analysis. And the petition at page 139 through 142, first of all, doesn't have any separate discussion of reasonable expectation of success. You look at the headings, it talks about the motivation to combine. In SAMSUNG-1, this court found that there would have been a motivation to combine and reverse the board on that issue. But there was no separate discussion of reasonable expectation of success. And in fact, in the first board decision, the board looked at the evidence in the petition and said, petitioner, you don't explain how it is that the teachings of GERPIDE-1 for measuring interference can be used in the combination to reduce that interference. And then in the second final written decision, the board completely reversed itself and said, well, okay, now we're finding that the evidence is there. The problem is that the parties agreed and the board ordered that no new evidence would be presented and no new evidence was offered. So how does the board find that the evidence that was insufficient to show that GERPIDE would work to reduce interference, or that GERPIDE would not work to reduce interference in the first final written decision, and now in the second written decision, that evidence suddenly suffices? Well, that's because we said in our decision that the reasonable expectation of success finding, lack of reasonable expectation of success finding by the board in the first time around was based on incorrect implicit claim construction. So there's nothing inconsistent with that in using the evidence to reach an opposite conclusion under the correct construction. That's what this court said, but then in the remand it said, go back and using the correct construction, re-look at that evidence and determine whether the teachings of GERPIDE could satisfy the intended purpose for adding GERPIDE in the first place. And again, that intended purpose is to reduce internal interference, which requires an interference measurement, which the board correctly found the first time around could not be done, and the petitioner presented no evidence to show that it could be done. And if it couldn't be done the first time without any additional evidence, it couldn't be done the second time, even when you apply this court's correct claim construction. And instead, what the board did was it essentially said, well, the board basically said, let's look at the patent owner's arguments and characterize those arguments in a way that A, wasn't accurate, and B, effectively shift the burden of proving that the combination would allow for an interference measurement to reduce interference, put that burden on the patent owner, and said that the patent owner didn't satisfy that burden. That turns the relative burden. Where were you pointing to in the, they said that the patent owner didn't satisfy that burden, where does that? That is, the entire discussion is on one page of the final written decision at page 27. I'm looking at that, yes. And there, the board addressed the patent owner's arguments and said, well, they're wrong. But what the board never did on that page or any page before was go back through the evidence under the correct claim construction and say, okay, does the- Sure it does, I mean, keep reading. But also, on your point on burden, it doesn't say that they had the burden, they just said these arguments are based on a mistaken premise. So they're rejecting the arguments. They can reject the arguments, that doesn't mean they're shifting the burden, right? I agree, it doesn't mean they're shifting the burden unless- So the rest of what they're saying is that they, as Judge Dyke pointed out, they talk about the fact that under the Federal Circuit's construction of selectively providing, blah, blah, blah, and they talk about the need not incorporate the specific features. And then they went on to review the evidence, which we review on substantial evidence. Where's the gap? The gap is that there was no discussion of how you would take Gerpide's teaching in the board's decision of measuring interference to reduce- Sorry, measuring interference so that you could select a frequency to reduce it. There was no discussion of how that would work in the combination of Codwell and Ingram. And the reason they didn't discuss it, and the reason that it's not discussed in the petition, is because it wouldn't work to eliminate interference. There is simply no possible way to combine Gerpide with Ingram 1 and Codwell. Okay. Since you argued that the argument that you're making incorporates Ingram Caldwell into Ingram Caldwell-Gerpide, don't you think, therefore, it's fair to say if the board finds there's a reasonable expectation of success for the combination of Ingram, Caldwell, and Gerpide, that that subsumes the question of whether there's a reasonable expectation of success with respect to Ingram and Caldwell? Well, not necessarily because our original patent donor response pointed out a number of independent reasons why you couldn't combine Ingram 1 and Codwell in the first place. The argument is that they just didn't make such a finding. Isn't their finding that they make at the bottom of page 27 that there was a reasonable expectation of success? Whether you agree with that finding or not, and you obviously don't agree. But isn't that a finding that incorporates the question of reasonable expectation of success in combining Ingram and Caldwell as well as Ingram Caldwell and Gerpide? Again, I don't think so because it's mixing apples and oranges. Well, didn't they decide that both the apples and the oranges were both actually such? I think that they left out the oranges in that the original combination of Ingram 1 and Caldwell couldn't be combined for a different reason and that's because the frequencies in which they operate are a thousand times different which is not the issue when you add in Gerpide. And again, that's the issue that there's no way of measuring. If there's no other questions, I'd like to reserve the balance of my time for the supply voltage issue. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm going to start with the reasonable expectation of success issues and just make a couple of points. I really would like to get to this supply voltage claim construction issue, if I may. With respect to the reasonable expectation of success issues, the substantial evidence, including the testimony of Dr. Subramanian, which the Board credited, we believe more than supports the Board's factual findings here. They simply cannot overcome the high barrier that's required under substantial evidence. As Judge Post, you pointed out, with respect to the Gerpide issue, we believe the Board's decision very methodically follows this Court's mandate in SAMSUN 1 and goes through, looks at the evidence from both sides, looks at the arguments and simply concludes that they did not find their arguments persuasive and they agreed with SAMSUN with respect to this issue. And I think there's one sentence that I'd like to present the Court to which is in Appendix 27 and this is where, it's in the middle, this is what the Board said. Petitioner asserts, supported by evidence from Dr. Subramanian, that the Ingram-Caldwell combination would have been modified based on Gerpide to provide features that adjust the oscillator signal frequencies provided to the input portion 13 to negate the effect of interference on the input portion 13 and touch sensing circuits. And of course, on the previous pages, they actually cited to that testimony from Dr. Subramanian. So we believe substantial evidence more than supports the Board's findings here. Unless you have any questions on the reasonable expectation of success issues, I'd like to move to the SPI Voltage Clamp Restriction. I have one question. Yes, Your Honor. In the previous Court decision page, you discussed the Ingram-Caldwell combination specifically. What do you make of that? Yes, Your Honor, we agree. And I think this goes back to, I think, Judge Dyke, your question. To the extent it's not foreclosed by the mandate, and going back to Judge Weissman, you pointed out that we do believe the Board did make enough findings with respect to Ingram-Caldwell and Ingram-Caldwell in the FIDI. And the Board's decision is supported by substantial evidence with respect to those issues. Okay, why don't you go ahead on the claim construction? Sure. With respect to the supply voltage claim construction issue, we believe the Board did incorrectly analyze that issue. If you look at the claim language, it states, an oscillator providing a periodic output signal having a predefined frequency where an oscillator voltage is greater than a supply voltage. Now, the Board obviously added the words, off the oscillator to supply voltage in that claim, and we believe that was improper for at least five reasons. First, it's undisputed, obviously the claim language does not have those words. Second, the specification, there's no disclaimer in the specification, so only the plain and ordinary meaning of the term should govern. In fact, UUSI knew, this gets to my next reason, UUSI certainly knew when it wanted to limit the terms to the oscillator, it did so. In fact, if you look at the language in Claim 37, they referred to the oscillator voltage. They didn't call it an output voltage, they said the oscillator voltage. So they certainly knew how to limit the term to the oscillator if they wanted to. And I think if you look at the other claims that we have here, for example, if you look at Claims 61, 83, and 94, that talk about the microcontroller, there again, what the board did was they said, well, that refers to the supply voltage of the microcontroller. But that again violates a fundamental canon of claim construction that they are attributing different meanings to different claim terms, and we think that's improper, especially if you look, for example, if you look at claims to the same claim term. Yes, right. And if you look at Claim 61, for example, it refers to the microcontroller, and it talks about the supply voltage, but it doesn't say it's the supply voltage of the microcontroller. But I think what it's telling here is, if you actually look at Claim 65, maybe we can do this together. If you can look at Appendix 105, and that's the 183 patent. So if you look at Column 3 on Appendix 105, it has Claim 61. And if you look at right around Line 40 on Column 3, it talks about the microcontroller, right? And at the end of that limitation, that's around Line 49, it says the signal output frequency is greater than the supply voltage. Again, it did not specify that it's the supply voltage of the microcontroller. But what did the board do here? The board actually limited that term to say it's the supply voltage of the microcontroller. But that can't be right, because if you look at Dependent Claim 65, and that's on Column 4 on the same page, and that's around Line 22, it says the capacitive responsive electronic switching circuit as defined in Claim 61, wherein the supply voltage is a voltage regulator supply voltage. So they certainly knew, Your Honors, how to specify and limit the supply voltage if they wanted to limit the scope of the supply voltage. And of course there are other claims in this patent, Claim 3, Claim 55, Claim 81, that all refer to the supply voltage and limit it, right? Perhaps in that case, the Dependent Claim was intended to limit the supply voltage to something coming from the voltage regulator, as opposed to simply a supply going into the oscillator without a voltage regulator. Is that a possible reading of those claims? Your Honors, certainly I think that is one reading of that claim, but again... Which would take care of the argument, right? Well, but I think you have to... I think my point is more simpler, Your Honor. They certainly knew how to limit the supply voltage. That argument comes up a lot. Different languages used in different settings. Let me ask you this. In the course of the prosecution history for the re-examination, the patentee was giving the written description support for this very portion of the claim. And that prosecution history indicates, to me at least, as I read it... You're nodding, so I assume you're familiar with this. It wasn't in the materials. But it indicates that the supply is the regulator 5 volts powered to the oscillator via lines 104 and 105, and also the 26 volts via 106. That seems to me to pin the tail on the donkey as to what supply voltage is now. That's coming right from the mouth of the patentee. Your Honor, I agree, and I think that actually goes to one of our arguments. So I think this goes back to the figure 4 embodiment, right? But why doesn't this indicate to us that supply voltage is that which is coming into the oscillator? And so I don't believe it does, Your Honor, because if you actually look at... And I don't have that particular page, but I believe I know what you're referring to. If you look at the prosecution history of the re-exam, they actually point to the voltage regulator as well, when they're pointing to... But the voltage regulator and the oscillator are essentially part of the same unit. I mean, the voltage regulator is taking these unregulated voltages and knocking it down to 26 and 5, and that's all supply into the oscillator, as opposed to supply to some circuit that's way down somewhere else, some component way down farther in the circuit, right? So I respectfully disagree, Your Honor, and if we could look at this together, I think this is what I was trying to get to, is if you can go to Appendix 71, which is the figure 4, and if you look at it, you'll see that the voltage regulator is actually a separate component from the oscillator. Yes, it is, but the voltage regulator and the oscillator operate in tandem, in effect. To take voltage that's coming in that's not suitable, presumably, for the oscillator, the voltage regulator fixes the voltage to something that the oscillator can use and then the oscillator sends it on. It seems to me not unreasonable to say that supply voltage is either the voltage from the voltage regulator to the oscillator, or the voltage that is coming into the voltage regulator. That's all supply for the oscillator. So, Your Honor, if the board had actually said that, I don't think we would be having this argument. The board actually... So our point is, in fact, if your reading is right, that the oscillator's supply voltage could come from the voltage regulator, the supply voltage of the voltage regulator, then I believe this court needs to correct the board's claim. It won't make any difference to the outcome of the case. Here's why, Your Honor. Because if you look at, for example, it goes back to the issue of what is the supply voltage. Assuming that... I would accept that it could be either of those two, but nothing else. Right, and that's where I would... And that is an assumption that seems to be entirely fair, given my characterization, at least as I see it, of the relationship between the supply voltage coming to the voltage regulator and the supply voltage coming to the oscillator, as being quite different in kind from other types of supply voltage downstream. So, Your Honor, I would certainly disagree that if you were to limit it to just those two. But that proves our point, that what the board said from a supply voltage perspective, that reading Claim 37, the board based its decision entirely on Claim 37, and sort of the way it was laid out. And they said, based on what Claim 37, the way it's written, that the supply voltage has to be the supply voltage of the oscillator. And we believe that's incorrect. And I think part of your reasoning, I think, supports that. That, for example, their reading excludes the voltage regulator's supply voltage. And, of course, the dependent claims, again, when they knew... They knew, for example, in Claim 65, that I pointed to, they actually said it's the voltage regulator's supply voltage. Well, taking a step back a little from the details of the argument, why would it make any sense to make anything turn on the supply voltage to some component that's way down somewhere else in the circuit? That just doesn't seem to... I can understand why the relationship between the supply voltage for the oscillator and the output is an important relationship. I can't understand why the supply voltage to some other component that has little or nothing to do with the oscillator matters. How would you write it down? I understand, Your Honor, and I understand, I think, what's perhaps troubling you. But I think the issue here is they are the drafter of their claims. They said it's supply voltage, right? We have to give the construction a common sense interpretation assuming that they had something in mind other than just throwing a few words in arbitrarily. So why would it make sense to say supply voltage relates to something that has nothing to do with the oscillator? Your Honor, I'm not suggesting that it doesn't have to do anything with the oscillator. I think our point is, again, from a... Sorry, Your Honor. What is the supply? So the supply voltage, we would believe, should be given its plain and ornery meaning, which is a voltage supply to a circuit or circuit component. Even if it's... It would obviously have to be related to the circuit, right? And so I'm not saying that you would go and plug it out of some other circuit. It obviously has to be related to the circuit. I think the problem is, again, they drafted the claims, they certainly knew how to limit the claims, and there's nothing special about the supply voltage in this claim, right? If you look at the specification, there's nothing special about saying, okay, well, for this claim that the supply voltage has to be, right, that the oscillator's output voltage has to be greater than the supply voltage. The specification says very little about this issue. So what should we make of the fact that Apple doesn't agree with it? So, Your Honor, we respectfully obviously disagree with Apple. This is an issue of claim construction. This Court reviews this de novo. And from our perspective, the Board did err in this. And the other thing I would point to is, Judge Bryson, going back to your question with respect to Figure 4, if you read the supply voltage the way they are, it excludes examples from the specification, right? So going back to that re-examination example you pointed to, it excludes the supply voltage that's coming into the oscillator, this 26-volt signal, it excludes that. And we don't believe that's an improper reading of this claim. So because under their reading, Judge Dyke, they would basically say that that is not a supply voltage of the oscillator because it's 26 volts, right, which would equal what's on the output of that circuit. So under their reading, it would exclude that example. And we just think it leads to really results that again, they are the drafter of the claim. They certainly selected the language when they needed to. But here, we believe they chose the claim very broadly and this court should give the broad meaning to this. Well, in that section in which they talked about the support for the oscillator voltage is greater than the supply voltage, they do refer to the voltage regulator as well as the oscillator. So I'm not sure I understand why you think that their interpretation would exclude this. So here's why, Judge Bryson. If you look at, under their reading of the claim, so when it comes to infringement, for example, they would say all we need to point to, so let's say you had a device that had a signal going in that was a 5 volt signal, and a 26 volt signal, like figure 4, and they would say, aha, this device infringes because it actually does have a signal that's coming in that's 5 volt. But let's ignore the other 26 volt signal. So my point is, again, they knew how to draft these claims. They certainly chose other words in other claims, and this court should really adhere to the canons of claim construction and really reverse the board's claim construction on this issue. And in fact, it should reverse here because there is no dispute that under the correct claim construction this needs to go back. So we would ask that this court reverse. And I'll save the rest of my time for everyone else here. Thank you. Mr. O'Keefe, would you like to address the process issues? Do you have anything that you want to say to us? Your Honor, I was going to meet the director in this case to address those questions. If the court has any questions about it, it is not requested. Otherwise, I don't feel like speaking to Dr. Goldstein. Apparently there are no questions. Thank you very much. Thank you. Okay, Mr. Hadley. Your Honor, on the supply voltage issue, again, I would start with the language of Claim 37 where that term appears, which is in the oscillator limitation. So clearly this limitation is dealing with the oscillator. And the only other point that I would make is that when you look at the claim language in the where-in clause, there are two essentially parallel terms. There's oscillator voltage and then there's supply voltage. Everyone agrees what the oscillator voltage is. It's the output of the oscillator. And the drafters, the patent owner, didn't have to say oscillator voltage of the oscillator to know that you're dealing with the output of the oscillator. Same thing if you look at the supply voltage. The patent owner didn't have to say supply voltage of the oscillator to know that you're dealing with the supply voltage of the oscillator. It is inherent, it's implicit under every rule of claim construction that the context in which the terms appear controls. And the context in which these two terms appear controls here. And again, you're dealing with the oscillator limitation and you don't need the prepositional phrase of the oscillator in either the oscillator voltage limitation or the supply voltage limitation to know that you're dealing with the output of the oscillator and the input to the oscillator. Do you regard the input to the voltage regulator as being part of the input to the oscillator? It can, but again, for the reasons that you explained, Your Honor, it doesn't matter whether you have a voltage regulator that is part of the oscillator or not. I personally believe that it is not. I think that when it talks about the supply voltage, you're talking about the supply voltage of the oscillator. And that's the way the board read it, I believe, correctly. But again, it really doesn't matter. And going back to the argument that was made about figure 4 versus figure 11, elsewhere in the briefing, I think everybody agrees that these claims read on the embodiment of figure 11, which is the multiple array embodiment, and not figure 4, which is the single-touch embodiment. Now one other technical question here. As I understand it, on figure 4, lines 104 and 105 are 5 volts. And line 106 is 26 volts. Now which is the supply voltage to the oscillator? The claim language says a supply voltage. So any one of them, as long as any one of them is less than the output, that satisfies the claim language. Thank you, Your Honors. Thank you, Your Honors. Just a couple of points. Thank you, Your Honors. Just a couple of points. Going back to the claim language, I think you do have to look at, again, if you look at the language of the claim, it said oscillator voltage, and then it said supply voltage. It did not say the supply voltage off the oscillator. So the code has to give the claim its natural broad reading from our perspective. And again, if you look at the other claims, the dependent claims and other claims that I pointed to, they certainly knew how to limit the supply voltage issue when they wanted to. And then, Judge Bryson, just going back, and I do think you understand this issue with respect to the 26-volt issue, it becomes a cherry-picking exercise from them when they want to make it broad. They say, well, it's a supply voltage, but then they don't want to limit it. So it does become a cherry-picking exercise, which is why there's nothing in the specification here that compels a disclaimer. So this court should give the terms supply voltage its broad meaning and send this back to the board. And actually, like I said, it should be reversed because they don't otherwise dispute the issues, unless you have any other questions.